**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

TIMOTHY K. LEWIS,                    )
ABBOTT DIABETES CARE INC., and       )
ABBOTT DIABETES CARE SALES CORP.,    )
                                     )
                    Movants,         )
                                     )          Misc. No. 21-1390
v.                                   )
                                     )
DEXCOM, INC.,                        )
                                     )
                    Respondent.      )

**<u>MEMORANDUM ORDER</u>**

Presently before the Court is Nonparty Timothy K. Lewis's Motion to Quash DexCom's Subpoena (Docket No. 1) filed by Movants Timothy K. Lewis, Abbott Diabetes Care Inc. ("ADC") and Abbott Diabetes Care Sales Corp. (together, the "Abbott Parties"). For the reasons set forth below, the Motion will be granted.

On November 22, 2021, Mr. Lewis was served with a subpoena from DexCom, Inc. ("DexCom") commanding him to testify at a deposition (the "Subpoena") in *DexCom, Inc. v. Abbott Diabetes Care, Inc., et al.*, Civil Action No. 6:21-cv-00690-ADA, pending in the United States District Court for the Western District of Texas (the "Texas Litigation"). (*See* Docket Nos. 1, ¶ 1; 2-1). The Texas Litigation involves DexCom's patent infringement claims against the Abbott Parties regarding continuous glucose monitors that they each make and market.[1] (*See*

---

[1] DexCom characterizes the Texas Litigation as the "latest skirmish in a multi-decade dispute between DexCom and Abbott over patents associated with their respective continuous glucose monitoring systems ("CGMs"). One cycle of litigation concluded in 2014 when DexCom and ADC entered into a Settlement and License Agreement ("SLA"), which – among other things – granted Abbott and DexCom licenses to certain of each other's patents. Seven years later, another round of litigation began, spread across numerous jurisdictions, including in the United States, the United Kingdom, and Germany." (*See* Docket No. 10 at 5).

Docket No. 2 at 7).  Mr. Lewis is not a party in the Texas Litigation, nor was he involved in any occurrence in dispute or otherwise retained as an expert in the Texas Litigation.  (*See* Docket No. 1, ¶ 2).

Mr. Lewis[2] has been involved solely as a legal expert in a different patent infringement case DexCom filed against ADC and two Abbott affiliates in Mannheim, Germany (the "German Litigation"), involving the German portions of certain European patents.  (*See* Docket No. 2 at 7). Mr. Lewis was retained in the German Litigation to provide a written expert opinion about certain questions of contract interpretation, under Delaware law, of the choice of law and forum provisions contained in a 2014 Settlement and License Agreement ("SLA") entered into by ADC and DexCom.  (*See* Docket No. 2-5, ¶ 16).

DexCom contends that the Abbott Parties put those portions of the SLA at issue in the Texas Litigation by proffering a SLA-based license defense in support of its efforts to transfer the Texas Litigation to the District of Delaware.  (*See* Docket Nos. 2-2 at 2; 10-2).  DexCom further contends that Mr. Lewis' opinions are relevant to the Abbott Parties' claim that they have a " 'non-frivolous' license defense under the SLA [and that] [h]is testimony on these issues falls within the scope of venue and jurisdictional discovery permitted by the Local Rules and the Court's Standing Orders."  (*See* Docket No. 2-2 at 2).

Mr. Lewis and the Abbott Parties move to quash the Subpoena, contending that:

(i)     Mr. Lewis is an unretained expert in the Texas Litigation (*see* Fed. R. Civ. P. 45(d)(3)(B)(ii));

---

[2]      Mr. Lewis is a partner in the law firm Schnader Harrison Segal & Lewis LLC.  He formerly served as a Judge of the United States District Court for the Western District of Pennsylvania from 1991 to 1992, and then as a Judge of the United States Court of Appeals for the Third Circuit from 1992 to 1999.  (*See* Docket No. 2-5, ¶¶ 2, 4).

(ii) Mr. Lewis has not been identified as a testifying expert in the Texas Litigation (*see* Fed. R. Civ. P. 26(b)(4)(D));

(iii) Mr. Lewis' compliance with the Subpoena would require disclosure of privileged material (*see* Fed. R. Civ. P. 26(b)(3)(A), 26(b)(4)(C), and 45(d)(3)(A)(iii));

(iv) It contravenes the governing Scheduling Order and "normal expert discovery procedures" in the Texas Litigation;[3] and

(v) Mr. Lewis' expert opinions in the German Litigation are irrelevant and inadmissible in the Texas Litigation, thus making compliance "overly burdensome."

(*See* Docket No. 1, ¶¶ 5-9).  As explained herein, the Motion will be granted pursuant to Rules 45(d)(3)(B)(ii) and 26(b)(4)(D)(ii) because Mr. Lewis is an unretained expert in the Texas Litigation, he has not been identified as a testifying expert in the Texas Litigation, and DexCom has not established an exceptional need for his deposition at this juncture.

As an initial matter, this Court has jurisdiction and authority to quash DexCom's Subpoena because it commands compliance in Pittsburgh, Pennsylvania, situated within the Western District of Pennsylvania, and, therefore, this is the District "where compliance is required." *See* Fed. R. Civ. P. 45(d).[4]

Next, Federal Rule of Civil Procedure 26 sets forth the general scope of discovery in civil suits: "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999).  Discovery requests may be

---

[3] On January 10, 2022, DexCom filed a Notice of Status of Texas Proceedings informing this Court that the presiding judicial officer in the Texas Litigation entered an Order on January 6, 2022, extending the deadline for venue discovery from December 20, 2021 to January 20, 2022, and modifying the related briefing accordingly.  (*See* Docket Nos. 16, ¶ 3; 16-1).

[4] The Court finds no exceptional circumstances in the present record to warrant transferring the pending Motion to the issuing court in the Western District of Texas pursuant to Fed. R. Civ. P. 45(f).

curtailed to protect a person from whom discovery is sought from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1); *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 238 (E.D. Pa. 2014).

Likewise, Rule 45 provides corresponding protections for nonparties subject to a subpoena. Rule 45(d)(3)(A) specifies when a court must quash or modify a subpoena, and Rule 45(d)(3)(B) and (C) provides when a court is permitted to quash or modify a subpoena. The subpoenaing party must first show "that its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1). Next, the burden shifts to the subpoenaed nonparty who must show that disclosure of the information is protected under Rule 45(d)(3)(A) or (B)." *Domestic Drywall*, 300 F.R.D. at 239 (internal citation omitted); *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 164 F.R.D. 623, 625-26 (E.D. Pa. 1996).

Here, DexCom contends the facts and bases underlying Mr. Lewis' opinions previously offered on ADC's behalf in the German Litigation are relevant to venue discovery in the Texas Litigation. Furthermore, DexCom contends that Mr. Lewis' opinions in this regard extend beyond "certain questions of Delaware law" and address the interpretation of contract terms in the specific context of patent licensing, and that such legal opinion testimony is relevant when the meaning of contracts depends on trade practice. (*See* Docket No. 10 at 13 (*citing Mt. Hawley Ins. Co. v. JBS Parkway Apartments, LLC*, 2020 WL 6821329, at *4 (W.D. Tex. Oct. 5, 2020) (collecting cases)). On the other hand, Movants argue that DexCom fails to meet its burden of demonstrating the relevance of Mr. Lewis' opinions and maintain that DexCom also fails to explain why it needs to "explore the bases" of Mr. Lewis' legal opinions even though those opinions are not being proffered in the Texas Litigation. (*See* Docket No. 2 at 8.)

The Court first observes that matters involving the interpretation of the choice of law and forum selection clauses contained in the SLA are relevant to the Abbott Parties' Motion to Transfer filed in the Texas Litigation, (*see* Docket No. 10-2), to the extent the SLA applies to the patents at issue in that case.  Therefore, portions of Mr. Lewis' expert opinions *may* be relevant even though, as Movants contend, DexCom fails to explain how the bases for Mr. Lewis' legal opinions, which were offered in the German Litigation to assist that foreign court's understanding of how the SLA's choice of law and forum provisions are interpreted under Delaware law, would be needed here.

Even if the contractual provisions upon which Mr. Lewis offered his legal opinions are relevant to the Texas Litigation, and in particular the Motion to Transfer, the Subpoena may nonetheless be quashed if Movants establish that Fed. R. Civ. P. 45(d)(3)(A) or (B) and case law construing same protects Mr. Lewis from testifying here.

Rule 45(d)(3)(B)(ii) permits this Court to quash the Subpoena if it would require "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." DexCom argues that this provision does not apply to Mr. Lewis because the Abbott Parties had retained him, albeit in other litigation.  Movants rebut this argument with case law from other jurisdictions holding that an expert retained in prior litigation, even involving the same parties, does not make the expert "retained" for purposes of the litigation at issue.  *See Mylan Inc. v. Analysis Group, Inc.*, 2018 WL 5043157 (D. Kan. Oct. 17, 2018); *Presidio Components, Inc. v. American Technical Ceramics Corp.*, 2015 WL 12843187 (S.D. Cal Oct. 5, 2015); *MedImmune, LLC v. PDL v. Biopharma, Inc.*, 2010 WL 2794390, *2 (N.D. Cal. July 15, 2010).  This Court finds these cases persuasive on this point.

Moreover, because Mr. Lewis has not yet been disclosed as a testifying expert pursuant to Fed. R. Civ. P. 26(a)(2) nor otherwise retained as a testifying expert in the Texas Litigation, DexCom's attempt to take his deposition at this juncture implicates Fed. R. Civ. P. 26(b)(4)(D). Consequently, DexCom may not command Mr. Lewis' deposition in the Texas Litigation absent a showing of exceptional circumstances under which it is impracticable for it to obtain facts or opinions on the same subject by other means.  *See* Fed. R. Civ. P. 26(b)(4)(D)(ii).  Here, DexCom merely contends that Mr. Lewis' opinions are "relevant" without articulating any need, much less an exceptional one, that cannot be accomplished without taking Mr. Lewis' deposition.  Instead, DexCom advocates for the Abbott Parties to withdraw Mr. Lewis' declaration submitted in the German Litigation where it cannot cross examine him, or to refrain from using any resulting ruling from the German tribunal in the event such a ruling would be adverse to its position in the Texas Litigation.  Yet, DexCom supplies no basis in the record before this Court showing exceptional circumstances under which it is impracticable to obtain facts or opinions on the same subject by retaining its own expert to render opinions on the application of Delaware law to the SLA for use in the Texas Litigation.

Accordingly, because Movants have established that Mr. Lewis is not a retained expert in the Texas Litigation and because DexCom has not established exceptional circumstances to necessitate taking Mr. Lewis' deposition, the Court grants Movants' Motion to Quash the Subpoena.

Based on the foregoing, the Court enters the following Order:

AND NOW, this 12th day of January, 2022, IT IS HEREBY ORDERED that Nonparty

Timothy K. Lewis's Motion to Quash DexCom's Subpoena (Docket No. 1) is GRANTED.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

cc/ecf:  All counsel of record